UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GEORGETOWN HOME
OWNERS ASSOCIATION, INC.                  CIVIL ACTION

VERSUS                                    NO. 20-102-JWD-SDJ

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, SEVERALLY
SUBSCRIBING TO POLICY
NUMBER AMR-60507, ET AL.

## RULING AND ORDER

This matter comes before the Court on the *Motion to Compel Arbitration, to Sever and Dismiss Claims Against Underwriters or Alternatively, Stay Litigation Pending Arbitration* (Doc. 5) filed by Defendants Certain Underwriters at Lloyd's, London, Severally Subscribing to Policy Number AMR-60507 ("Defendants" or the "Underwriters"). Plaintiff Georgetown Homeowners Association, Inc. ("Plaintiff") opposes the motion. (Doc. 13.) Defendants filed a reply. (Doc. 14-1.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted in part and denied in part.

I.     **Relevant Background and Procedural History**

A. **Background**

This matter arises out of an alleged breach of an insurance contract. Plaintiff owns residential and commercial property located in Baton Rouge, Louisiana. The property was insured at all relevant times under a policy ("the Policy") issued by Defendants. (*Petition for Damages* ("*Pet.*"), Doc. 1-2 at ¶ 3.) The Policy provided full insurance coverage for the property.

The Policy specifically covered direct physical loss or damage caused by weather related perils, such as hailstorms, windstorms, tornadoes, and other similar weather events. (*Id.*)

Plaintiff alleges that on May 18, 2018, the property was considerably damaged by a "violent wind, hail, and rain event." (*Id*. ¶ 4.) Plaintiff subsequently submitted a claim for the damages to Defendants, and a claims adjustment process ensued, the facts of which are in dispute and are not pertinent for purposes of this motion.

Importantly, Plaintiff's insurance policy contains an Arbitration Agreement, which provides in relevant part:

### SECTION VII – CONDITIONS

C. ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

[. . .]

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

[. . .]

The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent

jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

(Arbitration Agreement, Doc. 5-2 at 35–36.)

Pursuant to this Agreement, the Underwriters invoked their right to arbitrate the matters in dispute via letter dated February 20, 2020. (*See* Def. Ex. B, Doc. 5-4.) On April 1, 2020, the Underwriters filed the instant motion seeking to compel arbitration of Plaintiff's claims against them. (Doc. 5.)

### B.  Procedural History

On December 23, 2019, Plaintiff filed suit in state court, asserting numerous claims against Defendants.[1]  These claims include:

a. Failing to pay for all damages due under the policy which is now causing economic losses to the petitioner by virtue of the individual unit owners of the properties to want out of their ownership arrangements;

b. Failing to bring in qualified professionals to timely and properly assess all of the damages;

c. Improperly conveying non-policy requirement information to its insured in an attempt to deny a rightful claim, supported with all requested documents;

d. Refusing to assist its insured and offer to settle, in violation of the doctrine in *Kelly v. State Farm Fire & Cas. Co.,* 2014-1921 (La. 5/5/15);

e. Failing to pay sufficient amounts under the policy;

f. Failure to timely and properly communicate with its insured;

g. Breach of Contract;

h. Negligence;

i. Intentional or Negligent misrepresentation of non-policy and policy facts and provisions;

---

[1] In addition to the Underwriters, Plaintiff has named Blumberg & Associates, Inc ("Blumberg") as a defendant, alleging Blumberg failed to obtain the appropriate coverage for Plaintiff (*See Pet.*, Doc. 1-2 ¶¶ 1(b), 11–30). Blumberg is not a party to this motion.

j. Arbitrary and capricious penalties, attorney's fees, and general and special damages pursuant to LSA R.S. Arts. 22:1973 and 22:1892.

(*Pet.*, Doc. 1-2 ¶ 9.) Plaintiff seeks to recover damages due under the Policy, as well as extracontractual damages, mental anguish, and attorney's fees pursuant to La. Rev. Stat. § 22:868 and § 22:1973. (*Id.* ¶ 10.) Defendants removed the matter to this Court on February 21, 2020, under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). (Notice of Removal, Doc. 1 at ¶ 4.) Defendants now move to compel arbitration and to stay or dismiss Plaintiff's suit.

## II.    Discussion

In the instant motion, Defendants contend that because the Agreement is valid and enforceable and falls within the scope of the Convention, this dispute should be compelled to arbitration. (Doc. 5-1 at 2.) In response, Plaintiff argues that: (1) the Convention does not apply because it is reverse-preempted by Louisiana state law; (2) the Arbitration Agreement is adhesionary and therefore unenforceable; and (3) no agreement covers its claims under La. Rev. Stat. § 22:868 and § 22:1973. For the reasons explained below, Defendants' motion is granted in part and denied in part.

### A.  The Convention

#### 1. Applicability

##### a.  Parties Arguments

###### i.    Defendants' Motion

The Underwriters insist that this matter must be compelled to arbitration in accordance with the Policy's broad arbitration provision, the Federal Arbitration Act ("FAA"), and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). (Doc. 5-1 at 5.) In support of this argument, Defendants point out that there

is a strong presumption in favor of enforcing arbitration provisions, which "applies with special force in the field of international commerce." (*Id.* at 6–7 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631 (1985)).)

Pursuant to the FAA and the Convention, Defendants argue that this Court's inquiry is limited to determining whether: (1) an arbitration agreement exists which falls within the scope of the Convention's reach; and (2) the agreement is null and void, inoperative, or incapable of being performed. (Doc. 5-1 at 7–8.)

As to the first prong, the Arbitration Agreement falls within the scope of the Convention because: (1) the agreement is in writing, (2) arbitration is to take place in New York, which is in a country that is a signatory to the Convention, (3) the dispute arises from an insurance policy, which is a commercial legal relationship, and (4) at least some Defendants are not citizens of the United States. (*Id.* at 11.) Therefore, the first prong is met. (*Id.* at 12.)

As to the second prong, Defendants argue that there is nothing to suggest the agreement to arbitrate is null and void, inoperative, or incapable of being performed. Further, such agreements contained in insurance contracts have been enforced by this court and by the Fifth Circuit. (*Id.* (numerous citations omitted).) Accordingly, this dispute must be compelled to arbitration. (Doc. 5-1 at 2.)

### ii.    Plaintiff's Opposition

In opposition, Plaintiff argues that the Convention does not apply for three reasons. (Doc. 13 at 9 (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005)).)  First, Plaintiff argues that the Policy does not "provide for arbitration in a territory of a signatory to the Convention" because New York is listed as the place of arbitration, not an international country. (*Id.* at 9–10.)

Second, Plaintiff argues that "the Policy listed does not fall within the meaning of the Convention" because "if even one investor or partner of one syndicate [of the Underwriters] is American, Underwriters would not be a foreign entity." (*Id*. at 11–12.) Additionally, the Policy does not reference the Convention at all, "much less inform Georgetown that any type of international business is going on." (*Id.* at 10.)

Third, Plaintiff contends that the Convention does not apply since this is a domestic arbitration agreement, not an international one. The property, the policyholder, and the insurer are all located in the United States making this case "singularly in the domestic realm." (*Id*. at 12.)

### iii.    Defendants' Reply

In response, Defendants argue that the Convention applies because the dispute involves at least one party that is not a United States citizen.  (Doc. 14-1 at 1.) Specifically, Defendants contend that Plaintiff's reliance on "some sort of complete diversity concept" to determine whether foreign entities are involved is misplaced. Defendants then point out that the Convention applies if even one subscriber to the Policy is a foreign domicile. (*Id*. at 9 (citing 9 U.S.C. § 202).) Since the Underwriters have detailed some of the names that are domiciled and have a principal place of business in London, England and Plaintiff is a Louisiana entity, "there is unquestionably a contract between at least some parties domiciled and/or with their principal place of business in different countries." (*Id*.)

Further, the Policy makes it clear that the Underwriters have offices in London. (*Id*.) Thus, Plaintiff should have reasonably assumed at least some of the subscribing names were domiciled outside the United States. Regardless, according to Defendants, "Plaintiff's lack of

awareness of the entity with whom it was contracting is not a basis to resist enforcement of the obligation to compel the case to arbitration." (*Id*.)

### b.  Relevant Law

The Convention is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes. The Supreme Court of the United States has explained that "[t]he goal of the [C]onvention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 520, 94 S. Ct. 2449, 2457 n.15 (1974). Over one hundred countries have signed the Convention, including the United States, Germany and the United Kingdom of Great Britain and Northern Ireland.

In 1970, Congress enacted Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208, (the "Convention Act") "to establish procedures for our courts to implement the Convention." *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991). "The Convention Act incorporates the FAA except where the FAA conflicts with the Convention Act's few specific provisions." *Id.* (citing 9 U.S.C. § 208). The United States Supreme Court has expressed a liberal federal policy favoring the enforcement of arbitration provisions, especially in the field of international commerce. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 625, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (noting that the presumption in favor of arbitration carries "special force" when international commerce is involved, because the United States is also a signatory to the Convention).

The FAA and the referenced provisions of the Convention Act, including but not limited to Section 202, provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

Under the Convention, courts determining whether to compel arbitration "conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citation omitted). "[A] court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; '(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.' " *Id.* (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)). Once these requirements are met, the court must compel arbitration "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *Id.* (citation omitted). "U.S. courts have narrowly construed this 'null and void' exception." *Sunkyong Eng'g & Const. Co. v. Born, Inc*., 149 F.3d 1174, at *6 (5th Cir. 1998) (collecting cases). "While an agreement to arbitrate may be null and void when it is 'subject to an internationally recognized defense such as duress, mistake, fraud, or waiver,' we resolve doubts or questions of fact regarding those defenses in favor of arbitration." *Id.* (citations omitted).

8

### c. Analysis

Again, the Convention governs an arbitration agreement if (1) it is in writing, (2) the place of the arbitration is in a country that is a signatory to the Convention, (3) the dispute arises out of a commercial relationship, and (4) at least one of the parties is not a citizen of the United States. *Freudensprung,* 379 F.3d at 339. These four elements are easily met here.

First, as shown in the Policy, there is an agreement in writing to arbitrate the dispute. (Arbitration Agreement, Doc. 5-2 at 35–36.) The Arbitration Agreement provides that the parties shall arbitrate "all matters in difference" between them. (*Id.*)

Second, the agreement requires arbitration to take place in New York, which is in the territory of the United States, a Convention signatory.  (Arbitration Agreement, Doc. 5-2 at 36.) The Arbitration Agreement dictates that "[t]he seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance." (*Id.*)

Third, the dispute arises out of a commercial relationship, namely the parties' insurance agreement. *See Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*, 2018 WL 4042874 (E.D. La. Aug. 24, 2018); *Sw. LTC-Mgmt. Servs., LLC v. Lexington Ins. Co.,* 2019 WL 1715832, at *5 (E.D. Tex. Mar. 29, 2019), *report and recommendation adopted*, 2019 WL 1695498 (E.D. Tex. Apr. 17, 2019).

Finally, at least some of the Underwriters are citizens of the United Kingdom. Section 202 provides that an agreement does not fall under the Convention if it arises out of "a relationship which is *entirely* between citizens of the United States." 9 U.S.C. § 202 (emphasis added). Moreover, an arbitration agreement that is "'entirely between citizens of the United States'" may nonetheless "fall under the Convention" if it "involve[s] property located abroad,

envisage[s] performance or enforcement abroad, or ha[s] some other reasonable relation with one or more foreign states." *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc*., 866 F.3d 709, 712 (5th Cir. 2017) (quoting 9 U.S.C. § 202).

Here, Plaintiff asserts because the Underwriters did not include the names of each subscribing syndicate and their citizenship, it is impossible to determine the citizenship of each underwriter of the Policy. However, the Court does not need to ascertain the citizenship of every subscriber. *See Certain Underwriters at Lloyd's, London v. Prop. Risk Servs. Mgmt. II*, No. 3:19-CV-1696-S, 2019 WL 5318566, at *3 (N.D. Tex. Oct. 21, 2019) (finding that a dispute would fall under the Convention as long as one of the subscribers to the insurance policy was not an American citizen).

As explained by Defendants, a portion of the Policy is subscribed to by:

- Syndicate 2987 is an unincorporated association, the managing agent of which is Brit Syndicates Limited and sole corporate member of which is Brit UW Limited, registered in England and Wales, with its principal place of business in London, England;

- Argo Syndicate 1200 at Lloyd's managed by Argo Managing Agency Limited, registered in England and Wales, with its principal place of business in London, England;

- Syndicate 2003 is an unincorporated association, the managing agent of which is Catlin Underwriters Agencies Limited and the sole corporate member is Catlin Syndicate Limited, which is registered in England, with its principal place of business in London, England; and

- Syndicate 510 is an unincorporated association, the managing agent of which is Tokio Marine Kiln Syndicates Limited and the majority corporate member is Tokio Marine Kiln Group Limited, registered in England and Wales and has its principal place of business in London, England.

(Doc. 5-1 at 4.)

Although Defendants have not provided a complete list of all the underwriters participating in the Policy, the above is sufficient to show that the relationship between the

parties is not *entirely* between citizens of the United States. 9 U.S.C. § 202 (emphasis added);

*Certain Underwriters at Lloyd's, London,* 2019 WL 5318566, at *3 Accordingly, the fourth and

final factor is met.

### 2. McCarran-Ferguson Act & Reverse-Preemption

#### a. Parties Arguments

Plaintiff argues that the Convention does not apply because the McCarran-Ferguson Act

causes it to be reverse-preempted by La. Rev. Stat. § 22:868. (Doc. 13 at 12.) According to

Plaintiff, the McCarran-Ferguson Act commits the regulation of insurance to state law by

providing that "any state law enacted for the purpose of regulating insurance will trump, or

'reverse-preempt' any contrary federal law that does not relate specifically to insurance." (*Id.*)

Specifically, the McCarran-Ferguson Act provides: "No Act of Congress shall be construed to

invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the

business of insurance…, unless such Act specifically related to the business of insurance." (*Id*. at

12–13 (citing 15 U.S.C. § 1012(b)).)

Plaintiff argues that the Convention is an "Act of Congress" within the meaning of the

McCarran-Ferguson Act because it is not self-executing. (*Id*. at 13.) Therefore, the McCarran-

Ferguson Act causes the Convention to be reverse-preempted by Louisiana state law.  In support

of this argument, Plaintiff points to the dissent in *Safety National Casualty Corporation v.*

*Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 737-38 (5th Cir. 2009). Plaintiff states:

> The dissent argued that "because a non-self-executing treaty [such as the
> Convention] cannot itself provide a rule of decision in U.S. courts, the only
> candidate for a source of federal law with preemptive force under the Supremacy
> Clause is the statute that implements the treaty.
>
> Thus, it was an Act of Congress- the Convention Act- that must be construed to
> supersede state law. *Id*. Because the MFA requires federal statutes that affect the
> business of insurance to do so explicitly, and the Convention's implementing

11

statute does not do so, and the Convention Act "is therefore powerless to preempt state law." *Id.*

(Doc. 13 at 13–14.)

Plaintiff further relies on *Stephens v. American International Insurance Co*., 66 F.3d 41 (2d Cir. 1995), *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376 (4th Cir. 2012), and *Foresight Energy, LLC v. Certain London Mkt. Ins. Companies*, 311 F. Supp. 3d 1085, 1098 (E.D. Mo. 2018) in support of its proposition that the Convention is an "Act of Congress" within the meaning of the McCarran-Ferguson Act. (*Id.*)

Plaintiff then argues that since all three parts of the *Fabe* test are met in this case, the McCarran-Ferguson Act causes the Convention to be reverse-preempted by Louisiana state law. As such, La. Rev. Stat. § 22:868 makes the Arbitration Agreement between the parties unenforceable. (Doc. 13 at 14–17 (citing *U.S. Dept of Treasury v. Fabe*, 508 U.S. 491, 507 (1993)).)

In response, as in *Safety National*, Defendants contend that the Convention itself, not the Convention Act, supersedes the Louisiana anti-arbitration law and the McCarran-Ferguson Act. (Doc. 14-1 at 6–7.) The Underwriters argue that (1) the McCarran-Ferguson Act prohibits an "Act of Congress" from invalidating, impairing, or superseding a state law that regulates the business of insurance, (2) the Convention is not an Act of Congress, and (3) because the Convention is not an Act of Congress, the McCarran-Ferguson Act does not apply to the Arbitration Agreement in this case.

Defendants aver that Plaintiff's reverse-preemption argument has expressly been rejected by the Fifth Circuit. (*Id.* (citing *Safety National*, 587 F.3d at 719).) In *Safety*, the Fifth Circuit, sitting *en banc*, stated:

We are persuaded that state law does not reverse-preempt federal law in the present case for two distinct reasons: (1) Congress did not intend to include a treaty within the scope of an "Act of Congress" when it used those words in the McCarran-Ferguson Act, and (2) in this case, it is when we construe a treaty, specifically the Convention, rather than the Convention Act, to determine the parties' respective rights and obligations, that the state law at issue is superseded.

(*Id.* (citing *Safety National*, 587 F.3d at 718).)

According to Defendants, the Fifth Circuit then concluded that it was the Convention itself, not the Convention Act, that mandated arbitration of the dispute and proscribed the terms for determining whether the dispute was subject to arbitration. (*Id.* at 7.) Therefore, the court found that the obligations of the Convention superseded Louisiana law in that case. (*Id.*)

Defendants then point out that Plaintiff relies on the dissent in *Safety National* as support for its position, as well as the holding in *Stephens v. American Int'l Ins. Co.,* 66 F.3d 41 (2d Cir. 1995), a decision expressly rejected by the Fifth Circuit in *Safety National.* (*Id.* at 7.) Further, *ESAB Group, Inc. v. Zurich Ins., PLC*, 685 F.3d 376 (4th Cir. 2012) does not help Plaintiff's position because it provides an additional basis upon which to conclude the Louisiana statute does not reverse-preempt the Convention. (*Id.* at 7–8.)

In sum, the Convention is not an "Act of Congress" and thus is not subject to the McCarran-Ferguson Act and, consequently, the Louisiana law does not 'reverse-preempt' the treaty.

### b.  Relevant Law

The McCarran-Ferguson Act provides that "the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." 15 U.S.C. § 1011. It further states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the

13

purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).

"The McCarran-Ferguson Act thus allows state law to reverse-preempt an otherwise applicable federal statute" in certain circumstances. *Safety National*, 587 F.3d at 720; *see also Munich Am. Reins. Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998) ("Ordinarily, federal law pre-empts conflicting state law by virtue of the Supremacy Clause. The McCarran-Ferguson Act reverses that effect in the narrow range of cases involving state regulation of the insurance industry."). For instance, a state statute like La. Rev. Stat. § 22:868 might reasonably be read to reverse-preempt, by way of the McCarran-Ferguson Act, a federal statute like the FAA. *See Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006) (affirming district court holding that a Mississippi statute regulating the business of insurance reverse-preempts the FAA).

Whether the McCarran-Ferguson Act causes La. Rev. Stat. § 22:868 to reverse-preempt the Convention, however, is a different matter entirely, one to which the Fifth Circuit has clearly spoken. In *Safety National*, 587 F.3d 714, the *en banc* Fifth Circuit addressed the interaction between the Convention, the Convention Act, the McCarran-Ferguson Act, and La. Rev. Stat. § 22:868. The majority held that the Louisiana statute did not reverse-preempt federal law for two reasons: (1) Congress did not intend to include a treaty within the scope of an "Act of Congress" when it used those words in the McCarran–Ferguson Act, and (2) "it is when [the courts] construe a treaty—specifically, the Convention, rather than the Convention Act—to determine the parties' respective rights and obligations," that La. Rev. Stat. § 22:868 is superseded. *Id*. at 718.

As the *Safety National* court observed, La. Rev. Stat. § 22:868 "conflicts with the United States'[ ] commitments under the Convention." *Id*. at 719.

14

> The Convention states that each signatory nation "shall recognize an agreement in writing under which the parties undertake to submit to arbitration" their dispute "concerning a subject matter capable of settlement by arbitration." The Convention contemplates enforcement in a signatory nation's courts, directing that courts "shall" compel arbitration when requested by a party to an international arbitration agreement, subject to certain exceptions not at issue in the present case.

*Id.* Yet "requiring arbitration of the present dispute in compliance with the Convention would contravene" La. Rev. Stat. § 22:868. *Id.*

Faced with this conflict, the Fifth Circuit determined that the Convention, though given effect through implementing legislation, is not an "Act of Congress" for purposes of the McCarran-Ferguson Act. *Id.* at 722–24. The court explained that an "Act of Congress," as referred to in the McCarran–Ferguson Act, does not include a treaty, such as the Convention, which "remains an international agreement or contract negotiated by the Executive Branch and ratified by the Senate, not by Congress." *Id.* at 723 (footnotes omitted). This governing principle is true whether the treaty is self-executing or requires implementing legislation. *Id.* at 723–24. It is therefore the Convention itself, i.e., the treaty, not the Convention Act or the FAA, i.e., the federal statute that codified the treaty, that supersedes Louisiana law. *Id.* at 724–25.

Thus, the *en banc* court held that, because "the Convention, an implemented treaty ... supersedes state law, the McCarran-Ferguson Act's provision that no 'Act of Congress' shall be construed to supersede state law regulating the business of insurance is inapplicable." *Id.* at 725. Consequently, La. Rev. Stat. § 22:868, does not reverse-preempt the Convention. And absent such reverse-preemption, the Convention supersedes La. Rev. Stat. § 22:868 "by straightforward application of the Supremacy Clause." *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1145 (5th Cir. 1985) (noting that the Convention was "negotiated pursuant to the Constitution's [t]reaty power" and made "the highest law of the land" by its enabling legislation); *Todd v. Steamship Mut. Underwriting Ass'n, Ltd.,* No. 08-1195, 2011 WL

1226464, at *8 (E.D. La. Mar. 28, 2011) ("[T]he Convention supersedes [La. Rev. Stat.] § 22:868."); *McDonnel Grp. LLC v. Certain Underwriters at Lloyd's London*, No. 18-2804, 2018 WL 3156034, at *4 (E.D. La. June 28, 2018), *aff'd sub nom. McDonnel Grp., LLC v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427 (5th Cir. 2019), *as revised* (June 6, 2019).

In sum, the McCarran-Ferguson Act does not permit state laws to reverse-preempt the Convention. *Safety National*, 587 F.3d at 732. Therefore, where the Convention applies, La. Rev. Stat. § 22:868 has no effect. *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) ("Since [ ] *M'Culloch v. Maryland*, it has been settled that state law that conflicts with federal law is without effect.").

### c. Analysis

The Court finds that the Fifth Circuit's holding in *Safety National* is dispositive of this issue. The McCarran-Ferguson Act does not reverse-preempt the applicable law under the Convention. The Court is unpersuaded by Plaintiff's arguments to the contrary. *See McDonnel Grp., LLC v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 431-32 (5th Cir. 2019), *as revised* (June 6, 2019) (holding that because La. Rev. Stat. § 22:868 is preempted by the Convention, "the statute does not and cannot apply to McDonnel's policy."); *Gulledge v. Certain Underwriters at Lloyd's, London*, No. 18-6657, 2018 WL 4627387, at *4 (E.D. La. Sept. 27, 2018), *appeal dismissed sub nom. Pannagl v. Certain Underwriters at Lloyds, London*, No. 18-31070, 2018 WL 6720552 (5th Cir. Oct. 24, 2018) ("In accordance with the Fifth Circuit in *Safety*, this Court holds that the McCarran-Ferguson Act does not reverse preempt the applicable law under the Convention."); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 WL 7342752, at *8 (E.D. La. Dec. 14, 2020) ("[A]s it pertains to insurance

contracts subject to the Convention, the Fifth Circuit definitively held that the McCarran-Ferguson Act does not apply.").

Therefore, the Convention applies, and the Court must order arbitration unless the agreement is "null and void, inoperative or incapable of being performed." *Freudensprung*, 379 F.3d at 339 (quoting New York Convention, art. II (3)).[2]

### B.  Not Null, Void, Invalid

Plaintiff claims that Defendants cannot compel arbitration because the arbitration provision is unenforceable as a contract of adhesion. Plaintiff also contends that its bad faith claims under La. Rev. Stat. § 22:868 and § 22:1973 fall outside the scope of the Agreement. As a result, the Court will examine whether a valid agreement to arbitrate exists and whether the disputed claim is within the parameters of the agreement.

### 1. General Principles

Determining whether a suit must be arbitrated is typically a two-step process. Generally, issues of contract formation (including the existence of an arbitration agreement) are decided under state law and are gateway issues for the court. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 200-01 (5th Cir. 2016). The court also determines whether the scope of the arbitration agreement covers the claims before it. If the claims are within the scope of the arbitration clause, the court must compel arbitration. *Id.* at 201. But the parties may also agree to delegate that scope determination to the arbitrator by using a "delegation clause." *Id.*

When an arbitration agreement contains a delegation clause, the analysis changes. The Fifth Circuit recently clarified that:

> [e]nforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into any arbitration agreement

---

[2] Because the Convention applies, the Court will not address the parties' alternative arguments regarding the applicability of the FAA. (*See* Doc. 5-1 at 15-17; Doc. 13 at 14-17.)

at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement. Ordinarily both steps are questions for the court. *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).

*Id.* at 201.

A delegation clause decisively "transfer[s] the court's power to decide arbitrability questions to the arbitrator." *Id.* at 202. The clause "requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Under this approach,

if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Id.*

### 2. Valid Agreement

#### a. Parties Arguments

##### i. Defendants' Motion

Defendants argue that because they have established that the Arbitration Agreement falls within the scope of the Convention, the broad delegation clause mandates that the arbitration panel determine any remaining issues. (Doc. 5-1 at 9.) The arbitration clause at issue is broad because it covers "all matters in difference" between the parties. (*Id*. at 12.) It is also valid as demonstrated by multiple courts finding that this exact provision required arbitration of all disputes between the parties. (*Id*. at 10–11.) As such, the clause mandates that any and all issues

18

between the parties, including questions of contract formation, validity, and of arbitrability itself, be submitted to arbitration.

### ii.   Plaintiff's Opposition

Plaintiff contends that the court, not the arbitrator, should determine whether there is a valid agreement to arbitrate. (Doc. 13 at 2.) Specifically:

> The United States Supreme Court, citing *Prima Paint*, has interpreted the FAA to mean that if a party to a contract requiring arbitration raises a challenge to the *arbitration clause itself*, the district court must adjudicate it, but if the challenge is to the *contract as a whole*, the statutory language does not permit the district court to consider the issue, rather, the arbitrator must decide the issue. Accordingly, an issue with the contract *as a whole* must go to the arbitrator, but when the challenge is directed to the arbitration clause, such as here, a district court generally has authority under 9 U.S.C. § 4, to decide the issue.

(*Id.* (emphasis by Plaintiff).)

In this case, Plaintiff is not challenging the contract as a whole, but is challenging the arbitration provision itself. Therefore, this court—not the arbitrator—should determine if (1) a valid agreement to arbitrate exists between the parties and (2) whether the dispute falls within the scope of that agreement. (*Id.*)

Plaintiff then asserts that the Arbitration Agreement itself is unenforceable as a contract of adhesion. (*Id.* at 5.) A contract of adhesion is a contract, usually in printed from, prepared by a party of superior bargaining power for adherence or rejection by the weaker party. *Aguillard v. Auction Mgmt. Corp.,* 2004-2804 (La. 7/29/2005); 908 So. 2d 1, 9. Plaintiff argues this is a contract of adhesion due to (1) the physical characteristics of the contract which show that (a) the small, fine-print language is barely legible, (b) the policy is over 50 pages long, and (c) the policy is not double spaced; (2) the arbitration clause is not distinguishable because (a) it is not in bold-face typed letters, (b) it is listed under a section entitled "Section VII. Conditions" and (c) it is not even the first condition listed; and (3) Plaintiff had no bargaining power when

entering into the contract because (a) it had no choice in negotiating the provisions, (b) insurance

contracts are examples of typical contracts that are entered into with no bargaining power, and

(c) Defendants mailed the policy to Plaintiff and no one went through it with Plaintiff. (*Id*. at 5–

7.)

### iii.    Defendants' Reply

In response, the Underwriters contend that *Aguillard* does not help Plaintiff's position

because it requires the court to find one of two things: the entire contract is enforceable, or the

entire contract is unenforceable. (Doc. 14-1 at 2.) The Underwriters argue:

> Under the very clear and explicit law of the United States Supreme Court and the
> Fifth Circuit, *this* function is reserved for the arbitration, particularly when there is
> a broad delegation clause. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388
> U.S. 395, 87 S. Ct. 1801, 18 L. Ed 2d 1270 (1967*); Kubala v. Supreme Prod. Servs.,*
> 830 F.3d 199 (5th Cir. 2016).
>
> Since Plaintiff is suing on the contract at issue, it cannot be reasonably suggested
> the Plaintiff is looking to find the entire contract as unenforceable for failing to
> meet the standards deduced in *Aguillard*… Instead, Plaintiff is looking to negate
> only a portion of the contract in an attempt to put a justiciable issue before the
> Court.

(*Id*. at 2–3 (emphasis by Defendants).)

Regardless, the Arbitration Agreement is valid as supported by numerous cases, wherein

courts have held that all disputes between the parties must be compelled to arbitration when

considering this exact same provision. (*Id.* at 3–4 (citations omitted).) Additionally, the

Arbitration Agreement in this case does not meet the standard set out in *Aguillard* in finding a

contract adhesionary. First, the arbitration provision is in the exact same font as the other

provisions and is not typed in "fine print." (*Id.* at 4.)  Second, "it is very easily ascertainable for

Plaintiff to locate and consider all of its obligations with respect to the Policy."  This is so

because the arbitration provision is "clearly and unmistakably" titled "C. ARBITRATION

CLAUSE" and is on the same page as the section labeled "**CONDITIONS**". (*Id.*)  Additionally, "[t]he arbitration clause contains 9 paragraphs, with each paragraph set apart by a line space spanning two pages and encompassing 29 lines." (*Id.* at 4.) Finally, there is no evidence that Plaintiff was in a weaker bargaining position or had no choice in negotiating the provisions of the contract. (*Id.* at 4–6.) Therefore, the Arbitration Agreement is not adhesionary and is a valid and enforceable contract. (Doc. 14-1 at 4.)

### b.  Relevant Law

### i.    Who Decides?

"Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444, 126 S. Ct. 1204, 1208, 163 L. Ed. 2d 1038 (2006). The first challenges the validity of the arbitration agreement itself; the second challenges the contract as a whole. *Id.* A federal court decides challenges to the making of an agreement to arbitrate. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). Conversely, "a challenge to the validity [of a contract] as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing,* 546 U.S. at 449.

For example, in *Dillard v. Merrill Lynch*, the Fifth Circuit found that the district court properly adjudicated the enforceability of an arbitration provision. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148, 1154 (5th Cir. 1992). In that case, the plaintiff argued that he had put the "making of the arbitration" clause "in issue" by alleging that the clause is an unconscionable "adhesion contract." *Id.* at 1154. The plaintiff contended that he had no choice but to accept the arbitration clause in the contract because the inclusion of the clause

was nonnegotiable. *Id.* He further alleged that he could not go elsewhere because the majority of brokerage firms used such terms in their contracts; he added that such uniform use is the result of an antitrust conspiracy among brokerage firms. *Id.*

> The Fifth Circuit explained that:
>
> Under Supreme Court precedent, a party must challenge the " 'making' of the agreement to arbitrate" itself in order to create a jury-triable issue. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S. Ct. 1801, 1805–06, 18 L. Ed. 2d 1270 (1967). If the party makes allegations regarding the contract as a whole—e.g., that the brokerage contract is a contract of adhesion—that issue must go to arbitration. *Id.* In most cases in which a customer seeks to avoid arbitration by alleging that the contract is one of adhesion, he fails to allege specifically that the arbitration clause is adhesive. *See, e.g., Bhatia,* 818 F.2d at 422. Dillard has met this threshold requirement, for he focuses specifically on the arbitration provision as an adhesive term.

*Id.* at 1154, n.9; *see also, Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004) (finding the defendant's attack aimed at the arbitration clause alone was sufficiently independent of her general disagreement with the contract as a whole; "On this basis, the district court had the authority and the responsibility to adjudicate whether the arbitration agreement between [the parties] was procedurally unconscionable."); *Household Bank v. Allen*, 66 F. App'x 524 (5th Cir. 2003) ("Because defendants challenge only the arbitration clause, not the entire loan agreement, the district court properly adjudicated their challenge.) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)); *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 397 (5th Cir. 2006) (finding claims that arbitration clauses themselves were contracts of adhesion and, therefore, unenforceable are properly addressed by a federal court.).

### ii.    Adhesion

In *Aguillard v. Auction Mgmt. Corp.,* the Louisiana Supreme Court explained that "a contract of adhesion is a standard contract, usually in printed form, prepared by a party of

superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms." *See Aguillard*, 2004-2804, p. 9 (La. 6/29/05); 908 So. 2d 1, 8–9. Consent is the crucial issue: "[E]ven if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion." *Id.* at 11. The party alleging a contract is adhesionary bears the burden of demonstrating a lack of consent. *Id.* at 10.

In determining whether an arbitration agreement was adhesionary, the Louisiana Supreme Court focused on four factors: (1) the physical characteristics of the arbitration clause, including font size; (2) the distinguished features of the arbitration clause; (3) the mutuality of the arbitration clause, in terms of the relative burdens and advantages conferred by the clause upon each party; and (4) the relative bargaining strength of the parties. *Id.* at 16–17.

### c.   Analysis

As an initial matter, the Court finds that Plaintiff is challenging the existence and validity of the arbitration provision. Like in *Dillard*, Plaintiff specifically alleges that the arbitration clause is adhesive. *Dillard*, 961 F.2d at 1154, n.9; *see also*, *Banc One*, 367 F.3d at 430; *Brown*, 462 F.3d at 397. As such, the Court has the power to determine whether a valid and enforceable arbitration agreement exists. *Kubala*, 830 F.3d at 201.

Additionally, the parties disagree about which state law applies when determining if a valid and enforceable contract was formed. Defendants contend that New York law applies pursuant to the choice of law provision within the Arbitration Agreement. Plaintiff asserts that Louisiana law applies and then uses Louisiana state law cases in arguing the arbitration clause is

adhesionary. Defendants respond to Plaintiff's arguments using Louisiana law. Without resolving the issue of which law applies, the Court determines that Plaintiff's argument fails under Louisiana law.

The Court finds that an analysis of the *Aguillard* factors demonstrates that the Agreement is not an adhesionary contract. The first and second *Aguillard* factors, the physical characteristics and the distinguishable features of the arbitration clause, weigh strongly against adhesion. The section of the document containing the Arbitration Agreement is set off by a bold, capitalized header and the text of the Agreement is equivalently sized to the rest of the document. *See Dunn v. JP Morgan Chase Bank*, 2020 WL 1984328 at *12 (E.D. La. 2020) (finding that a binding Arbitration Agreement header set off with bolding and underlining was sufficient to meet this factor).

As for the third *Aguillard* factor, the Agreement is mutually applicable. Nowhere in the Agreement do Defendants reserve the right to litigate any of the covered claims specified in the Agreement that Plaintiff is bound to arbitrate. *See Aguillard*, 908 So. 2d at 16-17. Indeed, the Agreement expressly states that "[a]ll matters in difference between the Insured and the Companies . . . shall be referred to an Arbitration Tribunal in the manner hereinafter set out." (Arbitration Agreement, Doc. 5-2 at 35.) *See Hanna v. J.P. Morgan Chase & Co.*, No. 19-887-SDD-EWD, 2020 WL 4983065, at *5 (M.D. La. Aug. 24, 2020) (policy that said "[a]ny and all 'Covered Claims' . . . between me and JPMorgan Chase . . . shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement" was mutually applicable and weighed against a finding of adhesion).

Finally, the relative bargaining strength of the parties was not unequal. As in *Aguillard,* Plaintiff was not forced to agree to the terms of the arbitration provision. It could have avoided

arbitration by not engaging the Underwriter's services or negotiating for the removal of the arbitration provision. *Hanna*, 2020 WL 4983065, at *5; *Aguillard*, 908 So. 2d at 16–17.  There is nothing exceptional about this provision, and there is no reason to believe that Plaintiff did not knowingly and willingly accept the terms of it. *Brown*, 462 F.3d at 396–98.

Additionally, to the extent that Plaintiff contends the Agreement is invalid because Defendants mailed the contract and did not explain it to Plaintiff, this argument is rejected. In Louisiana, "a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Geovera Specialty Ins. Co. v. Odoms*, No. 19-30971, 2020 WL 6532087, at *4 (5th Cir. Nov. 5, 2020); *Aguillard*, 908 So. 2d at 17.  Thus, the Court finds that the Agreement is not a contract of adhesion and is enforceable.

### 3. Dispute within Scope

Having found that a valid arbitration agreement exists, this Court must next determine if the dispute in question falls within the scope of it.

#### a.  Parties Arguments

Plaintiff argues that its bad faith claims under La. Rev. Stat. § 22:868 and § 22:1973 are "statutory" and "not based on the Policy." (Doc. 13 at 22.) Accordingly,

> those claims are due to proceed in Court regardless of any alleged arbitration agreement. To permit mandatory arbitration on that matter would frustrate the Louisiana legislature's intent and authority over the regulation of insurance matters. The Louisiana legislature has specifically delegated authority to decide these matters to Courts – not arbitrators.

(*Id*.)

In response, the Underwriters purport that the valid broad delegation clause, which mandates arbitration of "all matters in difference" between the parties, includes Plaintiff's La. Rev. Stat. § 22:868 and § 22:1973 claims. (Doc. 14-1 at 3–4.)

In support of their argument, the Underwriters again cite to numerous cases that found the same arbitration clause required arbitration of all disputes between the parties, including extra-contractual claims under La. Rev. Stat. § 22:868 and § 22:1973. (*Id*. (citing *St. Theresa Specialty Hosp. v. Indian Harbor Ins. Co*., 2019 U.S. Dist. LEXIS 182461 (E.D. La. 2019) (extra-contractual claims under La. R.S. 22:1892 and 1973 subject to arbitration); *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's, London*, 2018 WL 4042874, 2018 U.S. Dist. LEXIS 144291 (E.D. La. 2018) (extra-contractual claims under La. R.S. 22:1892 and 1973 subject to arbitration); *Nueces County, Texas v. Certain Underwriters at Lloyd's of London*, 2:20-cv-00065 (S.D. Tex. 6/2/20); *Corpus Christi Indep. Sch. Dist. v. AMRISC, LLC*, 2019 U.S. Dist. LEXIS 78699, at *3 (E.D.N.Y. May 9, 2019) (compelling arbitration of all claims, including extra-contractual claims)).)

### b. Relevant Law

As instructed by the Fifth Circuit, "whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985). It is presumed that arbitration shall not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Sedco*, 767 F.2d at 1145 (ellipsis omitted) (quoting *Commerce Park of DFW Freeport v. Mardian Construction Co*., 729 F.2d 334, 338 (5th Cir. 1984)).

Drafting a broad delegation clause has the tendency to create a "presumption of arbitrability" covering all claims, disputes and other matters pertaining to the contractual agreement. *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co*., 921 F.3d 522, 538 (5th Cir. 2019). "Doing so evinces clear and unmistakable evidence that the parties intended to arbitrate." *5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*, 463 F. Supp. 3d 785, 790 (S.D. Tex. 2020) (internal quotes omitted) (citing *Lloyd's Syndicate 457 v. FloaTEC, LLC,* 921 F.3d 508, 514 (5th Cir. 2019)).

In *Sedco*, the Fifth Circuit characterized the agreement's language to arbitrate "any dispute" as broad. *Id.* at 1144-45 ("it is difficult to imagine broader general language than that contained in the arbitration clause"). In view of the parties' broad arbitration agreement, the Fifth Circuit held that the district court erred in refusing to order arbitration because "the parties agreed in writing that all disputes arising from their contractual relationship would be submitted to arbitration. Such an agreement falls squarely within Article II of the Convention." *Id.* at 1151.

### c.  Analysis

The Arbitration Agreement at issue is broad in scope because it states that "all matters in difference" that relate to the insurance policy are subject to arbitration. (Arbitration Agreement, Doc. 5-2 at 35.) By drafting a broad delegation clause, the parties have clearly and unmistakably evidenced their intent to arbitrate all their claims, disputes and other matters pertaining to the contractual agreement. *Halliburton*, 921 F.3d at 538.

Contrary to Plaintiff's argument that its bad-faith claims fall outside the scope of the arbitration agreement because they are "statutory" and "not based on the Policy," the substance of these claims relates to the insurance agreement. (Doc. 13 at 22.) Without the Policy of insurance between the parties, no disputes or differences would exist. Therefore, the Arbitration

Agreement conceivably covers these claims. Further, the delegation clause in the Agreement is valid. *See St. Theresa Specialty Hosp., LLC v. Indian Harbor Ins. Co.*, No. 19-12126, 2019 WL 8362168, at *2 (E.D. La. Oct. 22, 2019) (Feldman, J.) (compelling plaintiff to arbitrate its claims in accordance with 9 U.S.C. § 206 and § VII(C) of the insurance contract); *Port Cargo*, 2018 WL 4042874 (granting the defendant's motion to stay litigation pending arbitration because plaintiff's extra-contractual claims under Louisiana law were also subject to arbitration); *5556 Gasmer Mgmt.,* 463 F. Supp. 3d at 790-91 ("This Court agrees that all means just that – all. But even if it somehow didn't, the delegation clause on its face makes 'formation and validity' or the arbitration agreement expressly part and parcel of 'all disputes' that must be submitted to arbitration."). Thus, the delegation clause in this case refers all disputes, including Plaintiff's bad faith claims, to arbitration.

### C. Additional Unenforceability Claims

#### 1. Parties Arguments

Finally, Plaintiff argues that there are still two primary bars to the enforceability of the arbitration provision:

> 1. The location of the arbitration is not in Louisiana. By Underwriters own allegations, Underwriters has no connection to New York.

> 2. Moreover, the purported selection of arbitrators is a farce at best. It requires senior officials in claims handling or underwriting. These positions are necessarily insurance friendly. Moreover, given the large number of subscribing insurers, there will be no such person that is not in some way connected to insurance companies. On March 5, 2020, Underwriters appointed Dan Kohane as its arbitrator. *See Exhibit A*. More concerning is that Mr. Kohane has appeared (and likely does still appear) as counsel for Underwriters. *See Exhibit B.* How can it be said that the arbitration is fair if Underwriters can first demand that all arbitrators be naturally aligned with insurance companies and then that it may appoint its own lawyer as a neutral.

(Doc. 13 at 23–24.) Plaintiff further alleges that "[t]here is no process for ensuring fair and impartial arbitrators and, in fact, Underwriters has now proven it intends to rig the process to harm Georgetown and now benefit only itself." (*Id.* at 24.)

## 2. Analysis

Plaintiff argues that the Policy's Arbitration Agreement is unenforceable because its provision that "the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims" guarantees a biased decisionmaker, and because arbitration is to take place New York. (Doc. 13 at 23–24.) These provisions are collateral to and do not call into question the parties' agreement that "[a]ll matters in difference between the Insured and the Companies ... in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal." (Arbitration Agreement, Doc. 5-2 at 35.)

Plaintiff has not shown that the Arbitration Agreement's arbitrator selection procedure renders the entire Agreement unenforceable.  Plaintiff is free to select any "person[ ] employed or engaged in a senior position in Insurance underwriting or claims." (Arbitration Agreement, Doc. 5-2 at 35.) Plaintiff cites to no authority supporting its argument that such individuals will be "necessarily insurance friendly" or that "there will be no such person that is not in some way connected to insurance companies." (Doc. 13 at 23.) Plaintiff is not limited to employees of insurance companies. For example, Plaintiff could select a broker or agent in a senior position in a business that represents insureds in making claims.

Plaintiff's contention that "there is no process for ensuring fair and impartial arbitrator" also fails. Plaintiff is permitted to pick its own arbitrator. The Arbitration Agreement provides:

> Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting

Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

(Arbitration Agreement, Doc. 5-2 at 35.)

Additionally, the arbitration clause in the Policy states that, "Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred." (*Id.*) Further, Plaintiff fails to provide any support for its contention that the Underwriters have "proven [they] intend[] to rig the process to harm Georgetown and now benefit only itself." (Doc. 13 at 24.)

Plaintiff's remaining argument challenges the provision dictating New York as the seat of arbitration. However, Plaintiff identifies no reason why this objection cannot be made to the arbitrator. *See Bhandara Family Living Tr. v. Underwriters at Lloyd's, London*, No. 19-968, 2020 WL 1482559, at *4 (S.D. Tex. Feb. 20, 2020) ("Plaintiff identifies no reason why its objections to the application of New York law…cannot be made to the arbitrator.").

In light of the fact that there is a strong presumption in favor of enforcing arbitration provisions, which "applies with special force in the field of international commerce," *Mitsubishi Motors*, 473 U.S. at 631, Plaintiff has failed to show that the Policy's Arbitration Agreement is unenforceable. Moreover, even if the Court were to find that all of the aspects of the Arbitration Agreement challenged by Plaintiff were unenforceable, it does not follow that the parties' agreement to submit their disputes to arbitration would also be unenforceable. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70, 130 S. Ct. 2772, 2778 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *Bhandara,* 2020 WL 1482559, at *4.

30

In sum, Defendants have established the existence of a valid arbitration agreement subject to the Convention, which Plaintiff has not shown to be null and void, inoperative, or incapable of being performed. Therefore, this Court is obliged to order the parties to arbitration. *Freudensprung*, 379 F.3d at 341.

### D.  Staying this Litigation

Once the court orders arbitration under the Convention, the parties may seek a stay of the litigation under 9 U.S.C. § 3, a provision of the domestic FAA. *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.,* 601 F.3d 329, 332 (5th Cir. 2010). A stay of the proceeding is mandatory "when a party demonstrates that any issue involved in the lawsuit is referable to arbitration under an agreement in writing for such arbitration." *Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709, 726 (E.D. La. 2015). Thus, when a valid arbitration agreement governs, the court may not deny a stay. *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992). Although it may not deny a stay where it is proper, the court has the discretion to dismiss the case if it determines that all the claims are subject to arbitration. *Id*.; *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 WL 7342752, at *12 (E.D. La. Dec. 14, 2020). To be clear, dismissal is not mandated. *1010 Common,* 2020 WL 7342752, at *12.

Because Plaintiff's claims are subject to a valid arbitration agreement, the Underwriters assert that a stay is mandatory, but they request that the Court exercise its discretion and dismiss the matter entirely. (Doc. 5-1 at 17–18.) In opposition, Plaintiff contends that since Defendant Blumberg is also named in the suit, a motion to stay would not be in the interest of justice. (Doc. 13 at 22–23.) It further contends that if arbitration is ordered, the Court should not dismiss its claims against the Underwriters, but only stay them. (*Id*.)

Because all of Plaintiff's claims against the Underwriters are subject to a valid Arbitration Agreement, a stay is mandated. However, the Court will exercise its discretion and deny dismissal of Plaintiff's claims against the Underwriters at this time.

**III.    Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion to Compel Arbitration, to Sever and Dismiss Claims Against Underwriters or Alternatively, Stay Litigation Pending Arbitration* (Doc. 5) filed by Defendants Certain Underwriters at Lloyd's, London, Severally Subscribing to Policy Number AMR-60507 is **GRANTED** in part and **DENIED** in part; the Court will not dismiss Plaintiff's claims against the Underwriters, but will stay them pending the outcome of arbitration.

Signed in Baton Rouge, Louisiana, on <u>February 2, 2021</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**